IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

C.R. NO. B-99-020-01

RAYMUNDO GONZALEZ-GARIBAY,

Petitioner,

vs.

R.D. MILES, WARDEN, UNITED STATES PENITENTIARY – BEAUMONT,

Respondent.

United States District Court
Southern District of Texas
FILED

AUG 0 4 2004

Michael N. Milby
Clerk of Court

---

MOTION SEEKING RELIEF/REVIEW FROM ILLEGAL CONFINEMENT
PURSUANT TO 28 U.S.C.A. § 2241

---

BY:

RAYMUNDO GONZALEZ-GARIBAY,

*Raymundo Gonzalez-Garibay*
Pro se litigant.

RAYMUNDO GONZALEZ-GARIBAY
REGISTER NUMBER: 82756-079
UNITED STATES PENITENTIARY – BEAUMONT
P.O. BOX 26030
BEAUMONT, TEXAS 77720-6030

MAILING ADDRESS UPON RELEASE
OR DEPORTATION: 1/

RAYMUNDO GONZALEZ-GARIBAY
C/O 1810 ALHAMBRA STREET
DALLAS, TEXAS 75217

1. The fact that Petitioner may be deported, and thus will no longer be "in custody" will not disqualify him from habeas relief. Petitioner is in custody when he files this petition, and that is all the law requires. See Justice of Boston Municipal Court v. Lydon, 466 U.S. 294, at 299-300 (1984); see Umanzor v. Lambert, 782 F.2d 1299, 1301 (5th Cir. 1986). This Court's jurisdiction attaches at this point. See also Chavez v. U.S. I.N.S., 55 F.Supp.2d 555 (W.D.La. 1999)(citing Spencer, 118 S.Ct. at 983)[deportation](This is the sort of "concrete disadvantage [] ... imposed as a matter of law"). 55 F.Supp.2d, id. at 557.

I. CASES                    INDEX OF AUTHORITIES

ANDERS v. CALIFORNIA,
   386 U.S. 738 (1967) ..................................................... 4, 24, 25

ARIZONA v. FULIMANTE,
   499 U.S. 279, 111 S.Ct. 1246 (1991) ................................... 15

BOLLENBACH v. U.S.,
   326 U.S. 607, 66 S.Ct. 402 (1946) .................................... 15

BOUSLEY v. U.S.,
   523 U.S. 614, 118 S.Ct. 1604 (1998) ................................. 3, 21

BOWLES v. SEMINOLE,
   325 U.S. 410, 65 S.Ct. 1215 (1945) .................................. 2

BRADY V. MARYLAND,
   373 U.S. 83 (1963) ............................................ 16, 17, 18, 19

BREARD v. GREEN,
   523 U.S. 371, 118 S.Ct. 1352 (Apr. 14, 1998) ................... 20

C. GORDON & H. ROSENFIELD,
IMMIGRATION LAW AND PROCEDURE,
   53(e)(1)(1981) .................................................... 8

CALCANO-MARTINEZ v. I.N.S.,
   232 F.3d 328 (2nd Cir. 2000) .................................... 7

CARPENTERS v. U.S.,
   330 U.S. 395, 67 S.Ct. 775 (1947) .............................. 15

CHAVEZ v. U.S. I.N.S.,
   55 F.Supp.2d 555 (W.D.La. 1999) ....................... cover page

COLEMAN v. U.S.,
   515 A.2d 439 (D.C. 1986) ...................................... 17

DELMA BANKS, Jr. v. DOUG DRETKE, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL JUSTICE DIVISION,
   NO. 02-8286 ................................................... 19

DENNIS v. U.S.,
   341 U.S. 494 (1951) ........................................... 22

ELLIS v. U.S.,
   356 U.S. 674, 78 S.Ct. 974 (1958) ............................. 25

ESTELLE v. McGUIRE,
   502 U.S. 62, 112 S.Ct. 475 (1991) ............................. 3

EX PARTE BAIN,
   121 U.S. 1 (1887) ............................................. 27

FALKER v. TURPIN,
   518 U.S. 651, 116 S.Ct. 2333 (1996) ......................... 2

FAULDER v. JOHNSON,
   81 F.3d 515 (5th Cir. 1996) ................................. 20

GULLOTA v. U.S.,
   C.C.A. 8 (Mo.) 1940, 113 F.2d 683 ......................... 22

<u>INDEX OF AUTHORITIES</u> (cont.)

HYPPOLITE v. I.N.S.,
  382 F.2d 98 (1967) ............................................................. 11

IMMIGRATION SERVICE v. STANISIC,
  395 U.S. 62, 89 S.Ct. 1519 (1969) ............................................. 2

IN RE WINSHIP,
  397 U.S. 358 (1970) ........................................................... 3

JUSTICE OF BOSTON MUNICIPAL COURT v. LYDON,
  466 U.S. 294 (1984) ................................................... cover page

KALISKI v. DIST. DIR. OF IMMIGRATION & NAT. SER.,
  620 F.2d 214 (1980) .......................................................... 12

KWOCK JAN FAT v. WHITE,
  253 U.S. 454, 40 S.Ct. 566 (1970) ........................................... 13

KYLES v. WHITLEY,
  514 U.S. 419 (1995) .......................................................... 16

MATHEWS v. DIAZ,
  426 U.S. 67, 96 S.Ct. 1883 (1976) ........................................... 13

MATTER OF A.A.,
  20 I.& N. Dec. 492 (BIA 1992) ............................................. 9, 10

MATTER OF C.P.,
  8 I. & N. Dec. 504 (BIA 1959) ................................................ 9

MATTER OF M.S.,
  9 I. & N. Dec. 643 (BIA 1962) ................................................ 9

MATTER OF NAVARETTE,
  12 I. & N. Dec. 138 (1967) .................................................. 27

MATTER OF REYES,
  20 I. & N. Dec. 789 (BIA 1994) ............................................... 9

MATTER OF SANCHEZ,
  17 I. & N. Dec. 218 (BIA 1980) ............................................... 9

MATTER OF YANEZ-JACQUEZ,
  13 I. & N. Dec 449 (BIA 1970) ................................................ 9

McCOY v. COURT OF APPEALS OF WISCINSIN,
  486 U.S. 429, 108 S.Ct. 1895 (1988) ......................................... 25

MILLER v. ALBRIGHT,
  523 U.S. 420, 118 S.Ct. 1428 (1988) ......................................... 26

MONTANA v. KENNEDY,
  366 U.S. 308, 81 S.Ct. 1336 (1961) .......................................... 26

PEARCE v. DIRECTOR, OFFICE OF WKRS. COMPENSATION,
  647 F.2d 716 (1981) ........................................................... 2

PENSON v. OHIO,
  488 U.S. 75, 109 S.Ct. 346 ................................................... 24

PEOPLE v. IKERD,
  47 Ill.2d 403, 288 NE2d 120 (1970) .......................................... 22

INDEX OF AUTHORITIES (cont.)

PEQUENO-MARTINEZ v. TROMINSKI,
281 F.Supp.2d 902 (S.D.Tex. 2003) ............................................... 1

PUIG Y. GARCIA  v. MURFF,
S.D.N.Y. 1958, 168 F.Supp. 890 ................................................ 11

RE OUIMETTE,
115 R.I. 169, A.2d 250 ........................................................ 19

RODRIGUEZ-FERNANDEZ v. WILKINSON,
654 F.2d 1382, 1387 n. 3 (10th Cir. 1981) ..................................... 13

ROMERO v. COLLINS,
961 F.2d 1181 (5th Cir. 1992) ................................................. 3

ROSE v. CLARK,
478 U.S. 570, 106 S.Ct. 3101 (1986) .......................................... 15

RUSSELL v. U.S.,
369 U.S. 749 (1962) ....................................................... 23, 27

SHAUGHNESSY v. U.S. ex rel. MEZEI,
183 F.3d 1007 (9th Cir. 1999) ................................................ 10

SOL v. I.N.S.,
274 F.3d 648 (2nd Cir. 2001) .................................................. 6

SONG JOOK SUH v. ROSENBERG,
437 F.2d 1098 (9th Cir. 1971) ................................................ 11

SPOKANE FALLS & N.R. CO. v. ZIEGLER,
167 U.S. 65, 42 L.Ed. 215, 16 S.Ct. 728 ..................................... 20

STRICKLAND v. WASHINGTON,
466 U.S. 668, 104 S.Ct. 0252 (1984) .......................... 2, 16, 17, 24, 25

UDALL v. TALLMAN,
380 U.S. 1, 85 S.Ct. 792 (1965) ............................................... 2

UMANZOR v. LAMBERT,
782 F.2d 1299 (5th Cir. 1986) ........................................ cover page

U.S. v. AGURS,
427 U.S. 97, 96 S.Ct. 2392 (1976) ........................................ 14, 17

U.S. v. BAGLEY,
473 U.S. 667, 105 S.Ct. 3375 (1985) .............................. 14, 16, 17, 18

U.S. v. BENITEZ-VILLAFUERTE,
186 F.3d 651 (5th Cir. 1999) ................................................. 10

U.S. v. CHAPPELL,
6 F.3d 1095 (5th Cir. 1993) .................................................. 23

U.S v. CRONIC,
466 U.S. 648, 104 S.Ct. 2039 (1984) ......................................... 24

U.S. v. DEISH,
20 F.3d 139 (5th Cir. 1994) .................................................. 24

U.S. v. ESPARZA-PONCE,
7 F.supp.2d 1084 (S.D.Cal. 1998) ........................................ 21, 22

INDEX OF AUTHORITIES (cont.)

U.S. ex rel. GRIFFO v. McCANDLES,
D.C. Pa. 1928, 28 F.2d 287 ................................................... 11

U.S. v. ex rel. MEZEI,
345 U.S. 206, 73 S.Ct. 625 (1953) .......................................... 10

U.S. v. GAYTAN,
74 F.3d 545 (5th Cir. 1996) ................................................ 23

U.S. v. HENRY,
604 F.2d 908 (5th Cir. 1979) ............................................... 13

U.S. v. HYSON,
721 F.2d 856 (1st Cir. 1983) ............................................... 15

U.S. v. LARA-ACEVES,
183 F.3d 1007 (9th Cir. 1999) .............................................. 10

U.S. v. MENDOZA-LOPEZ,
481 U.S. 828, 107 S.Ct. 2148 1987) ........................................ 10

U.S. v. RANGEL-GONZALES,
617 F.2d 529 (1980) ........................................................ 21

U.S. v. SUPERVILLE,
40 F.Supp.2d 672 (D.Vi. 1999) ........................................... 21, 22

U.S. v. TORRES,
163 F.3d 909, 911 n. 9 (5th Cir. 1999) ...................................... 3

U.S. v. VALENZUELA-BERANL,
458 U.S. 858, 102 S.Ct. 3440 (1982) ....................................... 16

U.S. v. VIRAMONTES-ALVARADO,
149 (F.3d 912 (9th Cir. 1998) ............................................... 8

U.S. v. WEBER,
N.D. Ill. 1947, 71 F.Supp. 88 ............................................ 3, 25

U.S. v. WILSON,
884 F.2d 174 (5th Cir. 1989) ............................................... 24

VILLAFUERTE v. STEWART,
147 F.3d 1124 (9th Cir. 1998) .............................................. 20

WALLACE v. RENO,
24 F.Supp.2d 104 (D.Mass. 1998) ........................................... 12

WANG v. ASHCROFT,
320 F.3d 130 (2nd Cir. 2003) ............................................... 7

WHITNEY v. ROBERTSON,
124 U.S. 190, 8 S.Ct. 456 (1888) .......................................... 20

WONG WING v. U.S.,
163 U.S. 228, 16 S.Ct. 977 (1896) ...................................... 12, 13

WOODBY v. I.N.S.,
1966, 385 U.S. 276, 87 S.Ct. 483 .......................................... 12

YANEZ-JACQUEZ v. I.N.S.,
440 F.2d 701 (5th Cir. 1971) ............................................... 9

## INDEX OF AUTHORITIES (cont.)

YICK WO v. HOPKINS,
    118 U.S. 356, 6 S.Ct. 1064 (1886) ............................................. 13


## II. STATUTES

8 U.S.C. § 1101 .......................................................... 23, 26

8 U.S.C. § 1103(a) ............................................................ 11

8 U.S.C. § 1326 ............................................................... 3

8 U.S.C. § 1401 .......................................................... 23, 25

18 U.S.C. § 911 .................................................... 4, 6, 22, 23

18 U.S.C. § 3500 ............................................................. 16

28 U.S.C. § 1631 ............................................................. 1

28 U.S.C. § 2241 .................................................. 1, 2, 6, 19, 28


8 C.F.R. ................................................................... 11

## III. FEDERAL RULES

FEDERAL RULES OF CRIMINAL PROCEDURE ..................................... 15, 24

FEDRAL RULES OF CIVIL PROCEDURE ............................................. 6


## IV. ACTS OF CONGRESS

IMMIGRATION AND NATIONALITY ACT ......................................... 8, 26

ANTI-DRUG ABUSE ACT OF 1988 ............................................. 8, 10

IMMIGRATION ACT OF 1990 ................................................. 9, 10

IMMIGRATION AND NATIONALALITY TECHNICAL
CORRECTIONS ACT OF 1994 ................................................. 9, 10

ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT ........................... 9, 10

ILLEGAL IMMIGRATION REFORM AND IMMIGRANT
RESPONSIBILITY ACT .......................................................... 9

**MOTION SEEKING RELIEF/REVIEW FROM ILLEGAL CONFINEMENT
PURSUANT TO 28 U.S.C. § 2241**

**C.R. NO. B-99-020-01**

|  |  |
|---|---|
| (DIRECT APPEAL DOCKET NO. | 99-40766) |
| (U.S.D.C. NO. | B-01-CV-100) |
| (CERTIFICATE OF APPEALABILITY APPLICATION NO. | 02-40680) |
| (WRIT OF CERTIORARI APPLICATION NO. | 02-11160) |
| (MOTION FOR RELIEF FROM JUDGMENT: AND | |
| LEAVE TO FILE AN AMENDED COMPLAINT NO. | B-01-100) |

**TO THE HONORABLE JUDGE OF SAID COURT:**

Comes now, RAYMUNDO GONZALEZ-GARIBAY ("Petitioner"), requesting that this Honorable Court review the Statutory and Constitutionality of the illegal confinement imposed by the above styled cause number(s). **2/**

## I. JURISDICTION

This Honorable Court's jurisdiction is invoked in accordance with 28 U.S.C. § 2241; or in the alternative, 28 U.S.C. § 1631. The general habeas statute, 28 U.S.C. § 2241, directs that the writ may be granted where the petitioner is held in custody in violation of the United States Constitution, laws of the United States, or treaties of the United States,

> **(c)** The writ of habeas corpus shall not extend to a prisoner unless –
>
> ...
>
> **(3)** He is in custody in violation of the Constitution or laws or treaties of the United States.

2241(c)(3)(1994); see also 28 U.S.C. § 1631 (stating that whenever a court finds that it lacks jurisdiction, it, "shall, if it is in the interest of justice, transfer such action ... to any other court in which the action could have been brought").

2. See **Pequeno-Martinez v. Trominski**, 281 F.Supp.2d 902, 909-914 (S.D.Tex. 2003)(this court ... concludes that it has habeas jurisdiction over ... statutory and constitutional claims).

(1)

**a.) Basis for Jurisdiction.**

In the Judiciary Act of 1789 the first Congress authorized federal courts to grant the writ of habeas corpus for the purpose of an inquiry into the cause of commitment when a prisoner is "in custody under or by color of authority of the United States, ... ." Act of September 24, 1789, ch. 20, § 14, 1 stat. 82. This provision is the direct ancestor of 28 U.S.C. § 2241(c)(1), which uses almost identical language. See Falker v. Turpin, 518 U.S. 651, 659 n.1 116 S.Ct. 2333, 2338 (1996).

In general the Administrative Procedure Act sets out the standards which govern judicial review of administrative actions. See 5 U.S.C. § 706. An agency may not interpret its regulaitons in a manner so as to nullify the effective intent or wording of a regulation. Regulations promulgated pursuant to statutory authority have the force and effect of law, thereby making an agency bound by its own regulations. See e.g., Pearce v. Director, Office of Wkrs. Compensation, 647 F.2d 716, at 726-27 (1981). An administrative interpretation will be given controlling weight so long as it is not inconsistent with the plain meaning of the regulation or is not clearly erroneous. See Immigration Service v. Stanisic, 395 U.S. 62, 72, 89 S.Ct. 1519, 1525 (1969); Udall v. Tallman, 380 U.S. 1, id., at 17, 85 S.Ct. 792, at 801 (1965); Bowles v. Seminole, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217 (1945). Compare PETITIONER'S EXHIBIT NUMBER ("Pet.Exh.No.") 1 and Pet.Exh.No. 1(a) (basis of the instant conviction), with Pet.Exh.No. 2 (C.R.No. B-99-020-01 - Government's Exhibit No. 26)(same).

This Court should bear in mind that, "the ultimate focus of inquiry must be on the [FUNDAMENTAL FAIRNESS] of the proceeding(s) whose result is being challenged." Strickland v. Washington, 466 U.S. 668, supra, at 697, 104 S.Ct. 2052 (1984). Because "a person accused of a crime ... would be at a severe disadvantage, a disadvantage amounting to a lack of fundamental fairness if he could be adjudicated guilty and imprisonedfor years on the strenght of the same evidence as

(2)

would suffice in a civil case." <u>In Re Winship</u>, 397 U.S. 358, 363 (1970).

Furthermore, if Petitioner cannot show cause, the failure to raise His claim(s) in an earlier petition may nontheless be excused if He can show that a miscarriage of justice would result from a failure to entertain the claim. See <u>Romero v. Collins</u>, 961 F.2d 1181, at 1183 (5th Cir. 1992).

Moreover, a false representation as to citizenship is not a crime unless made for a fraudulent purpose. <u>U.S. v. Weber</u>, N.D.Ill. 1947, 71 F.Supp. 88. See also Pet.Exh.No.(s) 3 (Writ of Habeas Corpus Ad Testificandum, requireing Petitioner's presence in court pursuant to His non-fraudulent claim of citizenship); and Pet.Exh.No. 3(a) ("ORDER" for an "Evidentiary Hearing" to investigate Petitioner's background and claim of derived UNITED STATES ("U.S.") citizenship).

**b.) Good Faith Motion.**

"In conducting habeas review, a federal court is limited to 'deciding whether a conviction violated the Constitution, laws, or treaties of the U.S.' " <u>Estelle v. McGuire</u>, 502 U.S. 62, 67, 112 S.Ct. 475, 480 (1991). This Motion/Brief is brought in good faith, not for the purpose of [delay], but only to provide this Honorable Court with relevant evidence and information to support this motion/brief for review/relief, and to further substantiate Petitioner's claim. As Petitioner will show here, " 'actual innocence' means 'factual innocence, and not mere legal insufficiency.' " <u>Bousley v. U.S.</u>, 523 U.S. 614, 623-24, 118 S.Ct. 1604, 1611-12 (1998); <u>U.S. v. Torres</u>, 163 F.3d 909, at 911 n. 9 (5th Cir. 1999). To prove actual innocence [as here], the petitioner "must demonstrate that in light of all the evidence, it is more likely than not that no fact finder would have convicted him." **Id.** (citations and quotations omitted).

## II. <u>NATURE OF THE CASE</u>

Petitioner is currently in federal custody as a result of conviction for allegedly attempting to re-enter the U.S. illegaly in violation of 8 U.S.C. § 1326 (a) & (b); and falsely representing Himself as a citizen of the U.S. in violation

(3)

of 18 U.S.C. § 911. Petitioner proceeded to trial by jury and was found guilty on both counts of the indictment. Petitioner was sentenced to a total period of seventy-seven months on Count I and thirty-six months on Count II, to be served concurrently with each other. Petitioner appealed the sentence of conviction. Petitioner's appeal was dismissed as frivolous by the Fifth Circuit Court of Appeals. Petitioner attempted to vacate His sentence of conviction pursuant to 28 U.S.C. § 2255, i.e., U.S.D.C. No. B-01-CV-100; Certificate of Appealability Application thereof, i.e., No. 02-40680; Writ of Certiorari Application No. 02-11160; and Motion for Relief from Judgment; and Leave to File an Amended Complaint No. B-01-100.

### III. <u>PROCEDURAL HISTORY</u>

On December 25th, 1998, Petitioner was arrested for allegedly attempting to gain illegal re-entry into the U.S., and orally declaring Himself to be a citizen of the U.S. See Pet.Exh.No. _4_. On January 19th, 1999, Petitioner was presented with a two-count indictment. See Pet.Exh.No. _5_. On March 10th, 1999, Petitioner proceeded to trial by jury on His citizenship claim. See <u>Trial Record, Volume 1, Page 188</u>. On March 12th, 1999, the jury returned with a verdict of guilty to both counts of the indictment. See Pet.Exh.No. _6_.

On June 10th, 1999, U.S. District Judge Hilda G. Tagle sentenced Petitioner to seventy-seven months imprisonment for Count I, and thirty-six months imprisonment for Count II, to be run concurrently. See <u>Trial Record, Volume I, Page 132</u>. Also on June 10th, 1999, Petitioner orally appealed the sentence of conviction. See Pet.Exh.No. _7_ (lines 21-22)(C.R.No. B-99-020-01 - Sentencing Hearing Transcripts, Page 9)(same). On December 15th, 1999, court appointed counsel on appeal (court appointed trial counsel in agreement) filed a "Motion to Leave to Withdraw as Counsel." See Pet.Exh.No. _8_. On February 29th, 2000, Petitioner filed His "Response to Anders Brief." On June 27th, 2000, the Fifth Circuit Court of Appeals "granted" appellate counsel's motion to withdraw and dismissed Petitioner's

(4)

appeal as "frivolous." See Pet.Exh.No. _9_.

On June 15th, 2001, Petitioner timely filed His 28 U.S.C. § 2255 Motion. See Pet.Exh.No. _10_. On October 1st, 2001, the government responded to Petitioner's § 2255 motion. See Pet.Exh.No. _11_. On October 11th, 2001, Petitioner filed His "Rebuttal to Government's Response." See Pet.Exh.No. _12_. On November 5th, 2001, Petitioner's presence was required in court via a "Writ of Habeas Corpus Ad Testificandum." See Pet.Exh.no. _3_.    On November 6th, 2001, an "Evidentiary Hearing was set to investigate Petitioner's background, and non-frivolous claim of derived U.S. citizenship." See Pet.Exh.No. _3(a)_. On February 8th, 2002, the evidentiary hearing was conducted by U.S. Magistrate Judge John Wm. Black. On February 22d, 2002, Magistrate Black filed his "Magistrate Judge's Report and Recommendation." See Pet.Exh.No. _13_. On March 4th, 2002 (unbeknown to Petitioner as to the arguments thereof) Ad Testificandum counsel filed a "defendant's Objections to the Magistrate Judge's Report and Recommendation." See Pet.Exh.No. _14_. On March 12th, 2002, U.S. District Judge Hilda G. Tagle "ADOPTED" the Magistrate Judge's Report and Recommendation, and suggested that, Petitioner's § 2255 motion be dismissed in its entirety. See Pet.Exh.No. _15_.

On September 6th, 2002 (unbeknown to Petitioner), Ad Testificandum counsel filed a "Certificate of Appealability with Brief in Support."See Pet.Exh.No. _16_. On December 4th, 2002, the Fifth Circuit Court of Appeals "DENIED" Petitioner's request for a certificate of appealability. See Pet.Exh.No. _17_. On January 22d, 2003, the court denied a "Motion for Reconsideration." See Pet.Exh.No. _18_.

On March 3d, 2003, Petitioner presented the U.S. Supreme Court a "Petition for Writ of Certiorari," see Pet.Exh.No. _19_, which the Court returned same on March 11th, 2003, with a sixty day extension for "correcting and re-submitting. On May 10th, 2003, within the time allowed for resubmitting, Petitoner re-filed His writ of certiorari petition; which the Court returned same on May 16th, 2003, claiming "Out of Time." See Pet.Exh.No. _20_. On June 16th, 2003, Petitioner's petition for

(5)

writ of certiorari was docketted as No. 02-11160, and was deemed to have been filed as of March 3d, 2003. See Pet.Exh.No. __21__. On October 6th, 2003, the U.S. Supreme Court "DENIED" Petitioner's application for a writ of certiorari. See Pet.Exh.No. __22__.

On December 3d, 2003, Petitioner presented the U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS, BROWNSVILLE DIVISION ("Distr.Crt.") a "Brief in Support of Motion for Relief from Judgment," pursuant to FEDERA RULES OF CIVIL PROCEDURE ("Fed.R.Civ.P."), Rule 60(b)"; and incorporated therewith, a "Leave to File an Amended Complaint," pursuant to Fed.R.Civ.P., Rule 15(a). See Pet.Exh.No. __23__ (Civil Action B-01-100)(same). On May 17th, 2004, U.S. Magistrate Judge John Wm. Black filed his "Report and Recommendation" thereto. On June 1st, 2004, Petitioner presented the Distr.Crt. His "Objections to the Magistrate Judge's Report and Recommendation." On June 15th, 2004, the Distr.Crt. "ADOPTED" the Magistrate Judge's Report and Recommendation, and "DENIED" Petitioner's 60(b) relief from judgment, and 15(a) leave to file an amended complaint motion(s). See Pet.Exh.No. __24__.

## IV.  ISSUES FOR CONSIDERATION

1. WHETHER PETITIONER'S IMPRISONMENT IS CONSTITUTINALLY SUPPORTED BY STATUTORY LAW OR IS PETITIONER'S IMPRISONMENT VOID, IN VIOLATI-ON OF THE RIGHTS AFFORDED TO A DEFENDANT BY THE U.S. CONSTITUT-ION.

2. WHETHER PETITIONER'S RIGHT TO CONSULATE NOTIFICATION AND ASSIS-TANCE WERE VIOLATED DURING PETITIONER'S JULY 19th, 1996, DEPORT-ATION PRODEEDING; THE JANUARY 28th, 1998, REMOVAL PROCEEDING; AND THE INSTANT CASE'S RECORD OF CONVICTION.

3. WHETHER PETITIONER'S CLAIM OF U.S. CITIZENSHIP WAS MADE FOR A FALSE/FRAUDULENT PURPOSE, THUS WARRANTING CONVICTION OF TITLE 18 U.S.C. § 911, AND AS THE CHARGE IS TRACKED IN THE INDICT-MENT.

## V.  STANDARD OF REVIEW

A petition for habeas corpus pursuant to 28 U.S.C. § 2241 "may be used to challange incarceration or ... as being 'in violtation of the Constitution or laws or treaties of the U.S.' " Sol v. I.N.S., 274 F.3d 648, 651 (2nd Cir. 2001)(quoting

(6)

28 U.S.C. § 2241(c)(3)). In This regard, a district court has "jurisdiction to review purely legal statutory and constitutional claims." Id. (citations omitted). Federal district courts posses jurisdiction to review "purely legal statutory and constitutional claims." Calacano-Martinez v. I.N.S., 232 F.3d 328, at 342 (2nd Cir. 2000), which includes claims asserting the erroneous interpretation and application of relevant statutes and regulations. Wang v. Ashcroft, 320 F.3d 130, at 142-43 (2nd Cir. 2003). This Court has jurisdiction over the instant petition, since it raises purely legal questions.

## VI. ISSUE FOR CONSIDERATION

### NUMBER ONE

1. WHETHER PETITIONER'S IMPRISONMENT IS CONSTITUTIONALLY SUPPORTED BY STATUTORY LAW; OR IS PETITIONER'S IMPRISONMENT VOID, IN VIOLATION OF THE RIGHTS AFFORDED TO A DEFENDANT BY THE U.S. CONSTITUTION.

### ARGUMENT AND AUTHORITY

PETITIONER'S JANUARY 28th, 1998, REMOVAL; HIS MAY 19th, 1996, DEPORTATION; AND CONSEQUENTLY, HIS JUNE 10th, 1999, CONVICTION OF ATTEMPTED ILLEGAL REENTRY, WERE UNLAWFUL, AND THUS VOID, DUE TO ERRONEOUS INTERPRETATION AND APPLICATION OF RELEVANT STATUTES AND REGULATIONS:

   a.) Precedent Fact;

   b.) Pertinent Law;

   c.) Mistake of Law;

   d.) Manifest Abuse of Discretion, and Authority not Fairly Exercised;

   e.) Court Proceeding(s)/ Brady Doctrine.

a.) Precedent Fact.

The copulative facts of the instant offense are as follow: on December 23d, 1984, Petitioner was arrested for breaking and entering/unlawful entry. On June 25th, 1985, Petitioner was convicted of aforesaid, as "Burglary of a Building." On July 16th, 1985, on account of the aforementioned conviction, Petitioner was interviewed by an IMMIGRATION AND NATURALIZATION SERVICE ("I.N.S.") special agent out of the Houston, Texas I.N.S. Office.

(7)

Aliens who are determined to be deportable, "shall be deported" upon the order of the Attorney General. 8 U.S.C. § 1251(a). The Attorney General's responsibility in this regard is akin to her responsibility for enforcing the criminal laws; in both situations she has discretion to refrain from instituting proceedings even though grounds for their commencement may exist. See C. Gordon & H. Rosenfield, Immigration Law and Procedure, § 53(e)(1)(1981).

On August 19th, 1988, subsequent to investigating the aforementioned crime, the I.N.S. adjudicated Petitioner "no deportable." See Pet.Exh.No. 2 (I.N.S. Memorandum of Investigation)(C.R.No. B-99-020-01 - Government's Exhibit No. 26)(same). In 1988, the IMMIGRATION AND NATIONALITY ACT ("I.N.A."), section 241(a)(2)(A)(i), 8 U.S.C. § 1251(a)(2)(A)(i)(unamended), read as follow:

> an alien who —
> is convicted of a crime involving moral turpitude commited within five years (or 10 years in the case of an alien provided   lawful permanent residence status under 1255(i) of this title)  [here on November 9th, 1973, Petitioner was admitted into the U.S.  as  an immediate relative of a U.S. citizen, see Pet.Exh.No. 25 ] **after date of entry,** ... (emphasis added)
> is deportable.

**b.) Pertinent Law.**

The growing concern about drug abuse led Congress to add a new deportation ground that after its enactment would soon expand well beyond the drug context. The Anti-Drug Abuse Act of 1988, Pub.L. 100-690, §§ 7341, 7344, 102 stat. 4181, 4469-71 (November 18, 1988), created a new concept called "aggravated felony" and rendered deportable any alien who has been convicted of one. The original definition was, in fact, a modest one. It included murder, drug trafficking, and firearms trafficking (plus conspiracies and attempts to commit these crimes). See I.N.A., § 101(a)(43)(1988 version). See also U.S. v. Viramontes-Alvarado, 149 F.3d 912, 918 (9th Cir. 1998)(quoting pre 1990 - 8 U.S.C. § 1101(a)(43) for definition of what constitute aggravated felonies).

From its humble origins, however, the aggravated felony definition has    grown

(8)

into a colossus. The Immigration Act of 1990, Pub.L. 101-649, 104 Stat. 4978, § 501(a)(3)(November 29, 1990), added to the aggravated felony definition, among other offenses, "any crime of violence ... for which the term of imprisonment imposed ... is at least 5 years."

The Immigration and Nationality Technical Corrections Act of 1994, Pub.L. 103-416, § 222, 108 Stat. 4305, 4320-22 (October 25, 1994), then added a long list of new crimes to the aggravated felony definition. Here are some of the additions: theft, receipt of stolen property, and burglary, provided (in each case) that a sentence of at least five years was imposed.

The two most dramatic expansions of the aggravated felony definition came back to backin 1996. On April 24th, 1996, the ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT ("A.E.D.P.A."), § 440(e), and on September 30th, 1996, the ILLEGAL IMMIGRATION REFORM AND IMMIGRANT RESPONSIBILITY ACT ("I.I.R.I.R.A."), § 321, which reduced from five years to one year the sentence-imposed requirements for crimes of violence, theft, receipt of stolen property, and burglary.

These various enactments have provided for varing degrees of retroactivety. Therefore, to understand the variations, it is necessary to distinguish between the effective date of a change in the definition of "aggravated felony" and the effective dates of the various specific consequences of conviction of an aggravated felony. See generally, Matter of Reyes, 20 I. & N. Dec. 789 (BIA 1994); Matter of A.A., 20 I. & N. Dec 492, 495-500 (BIA 1992). The operative date is the date the offense was committed, not the date of conviction. See Matter of Sanchez, 17 I. & N. Dec. 218 (BIA 1980); Matter of Yanez-Jacquez, 13 I. & N. Dec. 449 (BIA 1970), reversed on other grounds, Yanez-Jacquez v. I.N.S., 440 F.2d 701 (5th Cir. 1971); Matter of M.S.,9 I. & N. Dec. 643 (BIA 1962); Matter of C.P., 8 I. & N. Dec. 504 (BIA 1959).

The original definition of "aggravated felony" applied the term to all convictions of the listed crimes, regardless of whether the convictions were entered

(9)

before, on, or after the enactment date of November 18th, 1988. See Pub.L. 100–690, § 7342, 102 Stat., at 4469–70 (no limitation on effectiveness of definition); Matter of A.A., 20 I. & N. Dec., at 495–500. But the provision that rendered aggravated felons deportable was specifically limited to those convictions that were entered on or after the enactment date of the Anti-Drug Abuse Act of 1988, i.e., November 18th, 1988. See Pub.L. 100–690, § 7344(b), 102 Stat., at 4471. In the contrast, in the Immigration Act of 1990, even the definitional expansions were limited to crimes committed on or after the enactment date of November 29th, 1990. See Immigration Act of 1990, § 501(b). Somewhat similarly, the definitional expansions ushered in by the Immigration and Nationality Technical Corrections Act of 1994, applied to convictions entered on or after the enactment date of October 25th, 1994. See Pub.L. 103–416, § 222(b), 108 Stat., at 4322. And the A.E.D.P.A. expansions of the aggravated felony definition also applied only to those convictions entered on or after the enactment date of April 24th, 1996. See A.E.D.P.A., § 440(f).

**c.) Mistake of Law.**

Although the Supreme Court has not enumerated the procedural protections guaranteed to an alien in a deportation proceeding, See U.S. v. Mendoza-Lopez, 481 U.S. 828, 828, 107 S.Ct. 2148, at 2155 n. 17 (1987), it is well established that "aliens in deportation proceedings are to be 'accorded due process.'" See also U.S. v. Lara-Aceves, 183 F.3d 1007, at 1011 (9th Cir. 1999); Shaughnessy v. U.S., ex rel. Mezei, 345 U.S. 206, 73 S.Ct. 625, 629 (1953)("[A]liens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to the traditional standards of fairness encompassed in due process of law."); U.S. v. Benitez-Villafuerte, 186 F.3d 651, at 656 (5th Cir. 1999)("Aliens who have entered the United States unlawfully are assured the protection of the Fifth Amendment due process clause.")(citaqtions omitted).

The Attorney General discharges her responsibility for enforcing the deportation

laws through the I.N.S., a division of the Department of Justice, to which she has delegated many of her responsibilities under the immigration laws. See 8 U.S.C. § 1103(a); 8 C.F.R., § 2.1 and § 103.1. The District Director of the I.N.S., therefore, normally makes the decision to institute deportation proceedings.

First of all, a showing of reasonable, substantial and provative evidence is required for determination of deportability, not the exercise of discretion. See Hyppolite v. I.N.S., 382 F.2d 98, at 99 (1967). Conviction for burglary more than five years after entry was insufficient to warrant deportation. U.S. ex rel. Griffo v. McCandles, D.C.Pa. 1928, 28 F.2d 287. Furthermore, an alien convicted of crime involving moral turpitude is excludable **but**, to be deported for conviction of crime involving moral turpitude committed after entry, crime **must** have been committed within five years after entry. Puig Y. Garcia v. Murff, S.D.N.Y. 1958, 168 F.Supp. 890. (emphasis added).

On January 28th, 1998, Neil Jacobs, Assistant District Director of Investigations, presented Petitioner a "NOTICE OF INTENT TO ISSUE A FINAL ADMINISTRATIVE REMOVAL ORDER"("Notice of Intent"), alleging that:

> 6. You were, on June 25, 1985, convicted ... for the offense of **Burglary of a building** .... (emphasis added).

> Charge: You are deportable ... because you have been  convicted of an **aggravated felony** as defined in section  101 (a) (43) ... 8 U.S.C. 1101(a)43). (emphasis added).

See Pet.Exh.No.  1 ; compare aforesaid with Pet.Exh.No.  2  (I.N.S. Memorandum of Investigation).

An abuse of discretion may be found if the decision is based on an improper understanding of the law. Song Jook Suh v. Rosenberg, 437 F.2d 1098, at 1102 (9th Cir. 1971).

On January 18th, 1998, prior to the issuance of the Notice of Intent, William G. Harrington, Deputy District Director, based on the evidence of the administrative record, issued Petitioner a "Final Administrative Removal    Order,"

(11)

claiming:

> Based upon the allegations set forth in the Notice of Intent and **evidence contained in the administrative record, I, the undersigned Deciding Service Officer of the I.N.S., make the following findings of fact and conclusions of law.** I further find that the **administrative record established by clear, convincing, and unequivocal evidence** that you are deportable as an alien convicted of an aggravated felony. ... (emphasis added).

See Pet.Exh.No.  1(a) .

The I.N.S. abuses its discretion if it bases its decision upon an improper understanding of the law. See Kaliski v. Dist. Dir. of Immigration & Nat. Ser., 620 F.2d 214,          216 n. 1 (1980)(quoting Song Jook Suh v. Rosenberg). In Woodby v. I.N.S., 1966, 385 U.S. 276, 87 S.Ct. 483, the Court held that, in deportation proceedings, the government **must establish the facts supporting deportability by clear, unequivocal and convincing evidence.** Woodby, 385 U.S., at 277. (emphasis added).

**d.) Manifest Abuse of Discretion and Authority not Fairly Exercised.**

Even an excludable alien is a "person" for purposes of the Fifth Amendment and is thus entitled to substantive due process. Wong Wing v. U.S., 163 U.S. 228, 238, 16 S.Ct. 977 (1896)("persons within the territory of the United States ... and ... even aliens ... **[may not]** be deprived of life, liberty or property without due process of law"). (emphasis added).

Here, on January 28th, 1998, ALIEN CRIMINAL APPREHENSION PROGRAM ("A.C.A.P.") member, and deporting agent DARRELL D. STANLEY ("Mr. Stanley"), conducted the Removal/Deportation proceeding that was manifestly unfair. When in order to empower the previously I.N.S. litigated deporting charge, see Pet.Exh.No.  2 , Mr. Stanley falsely and with invidious discrimination documentated a "frivolous charge and conviction," i.e., Aggravated Sexual Assault 'conviction of July 11th, 1986.' " See Pet.Exh.No.  26 . As was noted in Wallace v. Reno, 24 F.Supp.2d 104 (D.Mass. 1998), "the power to admit, exclude, or deport, however substantial, is not without rules and limits." Wallace, id., at 109.

(12)

This "frivolous charge and conviction," was "one" of the main reason[s] that Petitioner proceeded to trial by jury. See Pet.Exh.No.(s) _27_ (C.R.NO. B-99-020, TRIAL TRANSCRIPTS ("Trial Record"), Volume II, page(s) 87, line(s) 6 thru page 88, line 9)(same); Exh.No. _28_ (Trial Record, Sentencing Hearing, page(s) 3, line(s) 13 thru page 4, line 5)(same). Prejudicially, see supra, Pet.Exh.No.(s) _27_ and _28_, the I.N.S. **now** presently **affirms** the frivolous charge and conviction which Mr. Stanley **falsely and with invidious discrimination**, documentated into Petitioner's Record of Deportable Alien. See Pet.Exh.No. _29_.

**e.) Court Proceeding(s)/Brady Doctrine.**

The U.S. Supreme Court has mandated continuously that all persons, whether citizens or aliens, are entitled to the fifth ... amendments protection against deprivation of life, liberty, and property without due process of law. Mathews v. Diaz, 426 U.S. 67, 77, 96 S.Ct. 1883, 1890 (1976); Wong Wing, 163 U.S., at 238, 16 S.Ct., at 981; Yick Wo v. Hopkins, 118 U.S. 356, 369, 6 S.Ct. 1064, 1070 (1886). These protections apply to all aliens whether seeking entry at the border or in the interior, either legally or illegally. U.S. v. Henry, 604 F.2d 908, 914 (5th Cir. 1979); accord Rodriguez-Fernandez v. Wilkinson, 654 F.2d 1382, 1387 n. 3 (10th. Cir. 1981).

Here, the same procedures Petitioner was subjected to that led to the instant conviction, were evaluated by the U.S. Supreme Court in Kwock Jan Fat v. White, 253 U.S. 454, 40 S.Ct. 566 (1920), and the Court noted that, "immigration orders are final on the courts, **[unless]** the proceedings were manifestly unfair, were such as to prevent a fair investigation, or show manifest abuse of that discretion or authority not fairly exercised." 253 U.S., at 457-458. (emphasis added).

**Compare:** Pet.Exh.No. _30_ (Trial Record, Volume II, page 84, lines 7 thru 16)(same). Mr. Stanley's (who after first duly cautioned and sworn to tell the truth the whole truth and nothing but the truth) trial testimony, pertaining to count I of the indictment's charge:

(13)

Q  Okay. Let me clarify my question ... did you verify the inform-
ation regarding the alleged aggravated felony?

A. Okay. The only crime that we verified was the burglary  of  a
building. That's what he was deported for.

Q. Was that the only one you verified?

A. I'm going to say yes, ... or we would have put the other charg-
es in his paperwork. See also Pet.Exh.No.  26 .

**With:** Pet.Exh.No.  2  (Subject no deportable due to ... Burglary ...)(emphasis

added).

### prosecutorial misconduct

Here, on January 26th, 1999, subsequent to indictment, Petitioner specifically

requested **exculpatory** and **mitigating evidence** from the prosecutor, via pre-trial

motion(s). See Pet.Exh.No.(s)  31 , and Exh.No.  32  (page 5, ¶ XIV, § (a)).

The suppression by the prosecution of evidence favorable to and requested by the

accused, violates due process under the Fifth and Fourteenth Amendments, and

warrants the granting of a new trial, irrespective of the good faith or bad faith

of the prosecution, where the evidence is material either to guilt or punishment.

See  U.S. v. Agurs, 427 U.S. 97, 96 S.Ct. 2392 (1976). Due Process requires a

prosecutor to volunteer exculpatory matter to the defense, even without a request,

and a new trial is required if its omission would create a reasonable doubt as to

the defendant's guilt. 427 U.S., id., at 112, 96 S.Ct., at 2402. Suppressed

evidence, is deemed "material" if there is reasonable probability that the result

of the proceeding would have been different had the evidence been disclosed to the

defendant. U.S. v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375 (1985).

The "exculpatory and mitigating" evidence at issue here, had been litigated

by the I.N.S. on August 16th, 1988, see trial record C.R.No. B-99-020, Government's

Exhibit No. 26, and Petitioner had been adjudicated **"NO DEPORTABLE."** (emphasis

added).

Note that the standard of materiality when the undisclosed evidence is perjured

testimony — see Pet.Exh.No.(s):

(14)

Exh.No.  33  (Trial Record, Volume II, page 80, lines 7 thru 12)
(same)(Now , sir, to clarify rhe record, was my cli-
ent deported by the A.C.A.P. team ... yes ma'am);

Exh.No.  34  (Trial Record, Volume II, page 66, lines 5 thru 15)
(same)(went over the fact that were  charging  that
on June 25th, 1985, ... convicted of burglary  of a
building ... And the laws that govern why we can do
that.);

Exh.No.  35  (Trial Record, Volume II, page 76, lines 2 thru  5)
(same)(... Relating to this particular case,   ...
was convicted ... we call an aggravated felon   ...
burglary of a building. In 1996, they passed a  ser-
ies of immigration law.); and

Exh.No.  36  (trial Record, Volume II, page 77, lines 2 thru 20)
(same)(... do they have a right to go before  a jud-
ge, ... hàs been convicted for an aggravated felon,
such as burglary of a building, ... So, are you tel-
ling the jury ... concluded by whatever investigati-
on you've done ... aggravated felony on his record,
he is not entitled to address this before a  judge,
neutral, unbiased person? The way the law was writt-
en ... that's my understanding of the law) −

the prosecutor must disclose known perjury if "there is any reasonable liklihood

that the false testimony could have affected the judgment of the jury."

From this type of testimony, the court's impression of the deporting charge

is shown, when, in violation of Federal Rules of Criminal Procedure, Rule 43(a),

the court answered, out of the presence of counsel and Petitioner, a deliberating

jury's inquiry as to pertinent and exsisting law. See Pet.Exh.No.  37  ("... you

are to use in arraiving at a decision are contained in the instructions"). See also

U.S. v. Hyson, 721 F.2d 856, 865 (1st Cir. 1983)(approving district judge's refusal

to answer a jury's factual question because to do so "would be turning the whole

role of the court and the jury on its head ..."); Bollenbach v. U.S., 326 U.S. 607,

66 S.Ct. 402 (1946)("Particularly in a criminal trial, the judge's last word is

apt to be the decisive word."). As the U.S. Supreme Court has noted: "A court

cannot, no matter how clear the defendant's culpability, direct a guilty verdict."

See Carpenters v. U.S., 330 U.S. 395, 410, 67 S.Ct. 775 (1947); Rose v. Clark, 478

U.S. 570, 578, 106 S.Ct. 3101 (1986); Arizona v. Fulimante, 499 U.S. 279, 294,  111

(15)

S.Ct. 1246 (1991).

## Brady Doctrine

Brady v. Maryland, 373 U.S. 83 (1963), and its progeny require that the government disclose to the defendant, upon request, any evidence in its possession that is both favorable and material to guilt or punishment, at a time sufficient for it to be used for trial. The duty arises from the Due Process Clause of the Fifth Amendment and is separate from and independant of any discovery under the Jencks Act, 18 U.S.C. § 3500, or the Rules of Criminal Procedure. Failure to disclose such favorable evidence, regardless of the good faith or bad faith of the prosecutor, is a violation of Due Process.

Brady failed to establish a definition for "materiality;" however, U.S. v. Bagley, 473 U.S. 667, 105 S.Ct. 3375 (1985), attempted to address both issues. The majority opinion looked to two cases outside the Brady context, in which the materiality of undisclosed evidence was an issue; U.S. v. Valensuela-Bernal, 458 U.S. 858 (1982), and Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984). The Bagley court then found the standard from these cases "flexible enough to cover the 'no request,' 'general request,' and 'specific request' cases of prosecutorial failure to disclose evidence favorable to the accussed," Bagley, 473 U.S., at 682, and borrowed the standard for the materiality of undisclosed evidence from those cases. That standard is the one that is known today - whether there is reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. Id.

## What Must be Disclosed

"A 'reasonable probability' of a different result is shown when the government's evidentiary suppression 'undermines confidence on the outcome of the trial.' " Kyles v. Whitley, 514 U.S. 419, 434 (1995)(quoting Bagley, 473 U.S. at 678). Material evidence includes both evidence that is directly exculpatory, and impeaching evidence. See Bagley, 473 U.S., at 676-77.    There    is    substantial

authority recommending disclosure of Brady material. The defense generally can argue that the danger to the defendant's right to a fair trial out weigh danger of early disclosure, such as fabrication of testimony or influincing or intimidating witnesses. The A.B.A. standards call for early disclosure. Standards for Criminal Justice, 11-2.1(c), 11-2.2(a) (2d ed. 1980)(disclosure "as soon as practicable following the filing of charges"); 3-3.11(a)("disclosure at the earliest feasible opportunity").

Bagley, clarified the standard of materiality applicable in determining whether a conviction should be reversed on post-trial review for failure to disclose Brady material. Previously, the standard of materiality depended on whether the defense had made "no request," a "general request" or a "specific request." Agurs, 477 U.S., at 106-07.

Here, Petitioner's request for material evidence falls in the latter catagory(s), i.e., "general request," and "specific request." See Pet.Exh.No.(s) 31 (Motion and Brief To Produce Exculpatory and Mitigating Evidence); and Exh.No. 32 (page 5, ¶ XIV, § (a) - The defendant request production ... which would tend to exculpate the defendant, Brady v. Maryland ...).

Bagley drew the following standard from Strickland v. Washington, to govern all prosecutorial failures to disclose evidence favorable to the accussed:

> "the evidence is material only if there is a reasonable probability
> that, had the evidence been disclosed to the defense, the result
> of the proceeding would have been different. A 'reasonable probabi-
> lity' is a probability sufficient to undermine confidence in the
> outcome."

Bagley, 473 U.S., at 682. This standard of materiality is retrospective: "Brady ... and now Bagley call for 'retrospective evaluations, i.e., decisions as to whether a defendant's due process rights had been violated by the government's witholding of particular evidence.' " Coleman v. U.S., 515 A.2d 439, 448 (D.C. 1986)(quoting Lewis II, 408 A.2d, at 306).

Although the inquiry is retrospective and must take into account all evidence

(17)

presented at trial, the reviewing court **must** consider the impact of a failure to disclose exculpatory information on defense preparation and strategy. (emphasis added).

Here, during pre-trial Motion Hearing Proceedings, the government introduction of exhibits offered for admittance, see Pet.Exh.No. 38 (Trial Record, Motion Hearing, page 2, exhibits offered - 1, 2, 9, 10, 12-20, 3, 16, 9-10, 12-19, **26**, 62, and 78)(same), was amended, see Pet.Exh.No. 39 (Trial Record, Motion Hearing, page 78, lines 1 - 10, "... I'm offering Government's Exhibit No. 3, No. 9, No. 10, No. 12, No. 13, No. 14, No. 15, 16, 17, 18, 19, 20), as can be seen, Government's Exhibit No. **26**, was not introduced for jury trial use. Thus, the prosecutor's failure to comply with specific Brady demand, see Pet.Exh.No.(s) 31, and Exh.No. 32 (page 5, ¶ XIV, § (a)), may substantially prejudice the defendant in preparing and presenting the defense. As The U.S. Supreme Court held in Bagley:

> [T]he more specifically the defense requests certain evidence, thus putting the prosecutor on notice of its value, the more reasonable it is for the defense to assume from nondisclosure that the evidence does not exist and to make pre-trial decisions on the basis of this assumption. ... [T]he reviewing court may consider directly any adverse effect that the prosecutor's failure to respond might have had on the preparation or presentation of the defense case ... in light of the totality of circumstances and with an awareness of the difficulty of reconstructing in a post-trial proceeding the course that the defense and the trial would have taken had the defense not been mislead by the prosecutor's incomplete response.

Bagley, 473 U.S., at 682-83.

Unlike most trial error analysis, once error has been determined by applying Bagley, no harmless error analysis is required. If material evidence was suppressed, the conviction is overturned. The reason the Chapman harmless error analysis is unnecessary was explained by Justice Souter:

> Assuming arguendo that a harmless error inquiry were to apply, a Bagley error could not be treated as harmless, since "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different," necessarily entails the conclusion that the suppression must have had " 'substantial and injurious effect or influence in determining the jury's verdict,' " Brecht v. Abrahamson, 507 U.S. 619, 633 (1993), quo-

(18)

oting Katteakos v. United States, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946).

Kyles, 514 U.S., at 435 (citations omitted).

Just recently, in Delma Banks, Jr. v. Doug Dretke, Director, Texas Department of Criminal Justice, Correctional Institution Division, No. 02-8286, the U.S. Supreme Court rejected the notion that a habeas corpus petitioner should have done more to uncover the facts himself, the Court decided that a state prosecutor's failure to disclose, in violation of Brady v. Maryland, that a key witness for the state was a paid informer justified federal relief from the petitioner's death sentence.

The overturning of a conviction for a prosecutorial violation of the duty to disclose is governed by several principles: the need to deter prosecutorial misconduct and damper the temptation for public officials to search for conviction rather than truth, and the importance of remedying the harm caused a defendant by a trial in which all of the facts do not come out. Re Ouimette, 115 R.I. 169, A.2d 250

## VII. ISSUE FOR CONSIDERATION

### NUMBER TWO

2. **WHETHER PETITIONER'S RIGHT TO CONSULATE NOTIFICATION AND ASSISTANCE WERE VIOLATED DURING PETITIONER'S JULY 19th, 1996 DEPORTATION PROCEEDING; THE JANUARY 28th, 1998, REMOVAL PROCEEDING: AND THE INSTANT CASE'S RECORD OF CONVICTION.**

### ARGUMENT AND AUTHORITY

**THE GENERAL HABEAS STATUTE, 28 U.S.C. § 2241, DIRECTS THAT THE WRIT MAY BE GRANTED WHERE THE PETITIONER IS HELD IN CUSTODY IN VIOLATION OF ..., ..., OR TREATIES OF THE UNITED STATES.**

The Vienna Convention was approved by the Senate on October 22nd, 1969, formally ratified by President Nixon on November 12th, 1969, and entered into force for the U.S. on December 24th, 1969. See William J. Aceves, The Vienna Convention on Consular Relations: A Study of Rights, Wrongs, and Remedies, 31 Vand. J.

(19)

Transnat'l L. 257, 268-269 (1998).

Petitioner brings to this Court's attention in His 28 U.S.C. § 2241 petition that, the instant case is distinguishable from the holding in Faulder v. Johnson, 81 F.3d 515 (5th Cir. 1996), where the Fifth Circuit rejected a habeas petitioner's claim under the convention on the ground that any assistance he might have obtained from his consulate would have had no effect on his defense. 81 F.3d, at 520.

As a treaty made under the authority of the U.S. many courts in the past have recognized the Vienna Convention to be the supreme law of the land. See e.g., Breard v. Green, 523 U.S. 371, 118 S.Ct. 1352 (Apr. 14, 1998)("the Vienna Convention ... has continuously been in effect since 1969."); see generally Whitney v. Robertson, 124 U.S. 190, 194, 8 S.Ct. 456 (1888)("By the Constitution a treaty is placed on the same footing, and made of like obligation, with an Act of legislation."). The Supramacy Clause of the U.S. Constitution provides:

> The Constitution and laws of the U.S. which shall be made in pur-
> suance thereof; and all treaties made, or which shall be made,
> under the authority of the U.S., shall be made the supreme law
> of the land; and the judges in every state shall be bound there-
> by; any Thing in the Constitution of Laws of any state   to the
> contrary notwithstanding.

U.S. Constitution Art. VI, cl. 2. It is a fundamental principle of American law that state as well as federal courts must take notice of the Constitution of the U.S., acts of Congress, Spokane Falls & N.R. Co. v. Ziegler, 167 U.S. 65, 42 L.Ed. 215, 16 S.Ct. 728, and treaties entered into by the U.S. (emphasis added).

On December 27th, 1998, SRI/INS Ignacio Guerrero Jr. filed a Criminal Complaint in the Distr.Crt. "alleging that Petitioner attempted to re-enter unlawfully ... and claimed to be a citizen of the U.S.. See Pet.Exh.No. 4 . Article 36 of the Vienna Convention on Consular Relations, 21 U.S.T. 77, requires that governmental authorities inform an arrested suspect of his right to contact the consular post of his his nationality and request assistance. See Villafuerte v. Stewart, 147 F.3d 1124, at 1125 (9th Cir. 1998). Here, Petitioner was not informed then, or to date

(20)

relevant to this motion of habeas corpus, of His right to contact and request assistance from the Mexican Consulate Post of His nationality. Available authorities suggest that the term "without delay" refers to a time-period of one to three days. See U.S. Dept. of State, Consular Notification and Access (1998)(stating that notification should be given at booking); Consular Convention between the U.S. and the [former] Soviet Union, 19 U.S.T. 5018, Art. 12 (stating that notification may be given within one to three days).

It was held that, in order to show actual prejudice under the Vienna Convention, a defendant must show:

      (1.) that he did not know of his right to consular assistance --
          (to date, no governmental authority has informed Petitioner
          of this His right);

      (2.) that he would have availed himself of this right --
          (through diligent research, did this right become known to
          Petitioner, and hence, on June 29th, 2000, Petitioner avail-
          ed Himself of this right, and contacted the "Consulate of
          Mexico," 1140 World Trade Center, New Orleans, La., 70130,
          see Pet.Exh.No. _40_, and requested assistance; also subseq-
          uent to Petitioner's filing § 2255 motion, on September
          18th, 2001, Petitioner was visited at: Three Rivers F.C.I.,
          Three Rivers, Texas, 78071, by Mr. Carlos Zamora & Mr. Jor-
          ge Lopez, Mexican Consulate's from the office of the "Consu-
          lado de Mexico," 800 N. Shoreline Blvd., suite 410, N. Tow-
          er, Corpus Christi, Texas, 78401, who took some of Petition-
          er's family background information, said Petitioner was a
          citizen of the U.S., and left; On March 22nd, 2004, Petitio-
          ner "again" contacted the "Consulado General de Mexico ,"
          4507 San Jacinto Street, Houston, Texas, 77004, see Pet.-
          Exh.No. _41_, and presented the Consular Office with the
          same relevant evidence that, Petitioner presents in this
          His habeas corpus, see also Pet.Exh.No. _42_ (Consulate res-
          ponse).

      (3.) there was a liklihood that the contact would have resulted
          in assistance --
          (" 'actual innocence' means 'factual innocence, and not mere
          legal insufficiency.' " Bousley v. U.S., 523 U.S., at 623-6-
          24).

See U.S. v. Esparza-Ponce, 7 F.Supp.2d 1084, at 1096-98, n. 10 included (S.D.Cal. 1998). See also U.S. v. Rangel-Gonzales, 617 F.2d 529, 532-533 (1980).

Most courts facing the question of whether detained aliens have standing to raise claims under the convention have conceded that they do. See e.g., U.S. v.

(21)

Superville, 40 F.Supp.2d 672 (D.Vi. 1999); Esparza-Ponce, 7 F.Supp.2d, at 1095-1096. In its recent decision in U.S. V. Superville, the District Court in the Virgin Islands, made the following obsevation:

> Under the fundamental principle of **pacta sunt servanda,** which states that **"treaties must be observed,"** the U.S. has consistently invoked the Vienna Convention to protest other nations' failure to provide Americans with access to consular officials. This basic principle also requires, **of course,** that the U.S. **respect its obligations under the treaty.** Reciprocity is the foundation of international law. (emphasis added).

Superville, 40 F.Supp.2d, at 676 (citing Breard v. Pruett, 134 F.3d 615, 622 (4th Cir. 1998)(Butzner, J., concurring)). (internal citations omitted). See also People v. Ikerd, 47 Ill. 2d 403, 406, 288 NE2d 120, 121 (1970)(fundamental fairness exception applies "where the right relied on has been recognized for the first time after the direct appeal").

## VIII.  ISSUE FOR CONSIDERATION

### NUMBER THREE

WHETHER PETITIONER'S CLAIM OF U.S. CITIZENSHIP WAS MADE FOR A FALSE/ FRAUDULENT PURPOSE, THUS WARRANTING CONVICTION OF TITLE 18 U.S.C. § 911, AND AS THE CHARGE IS TRACKED IN THE INDICTMENT.

### ARGUMENT AND AUTHORITY

TO WARRANT CONVICTION OF DEFENDANT FOR FALSELY REPRESENTING HIMSELF TO BE A CITIZEN OF THE U.S. FOR A FRAUDULENT PURPOSE, THE GOVERNMENT HAD THE BURDEN OF PROVING BY COMPETENT EVIDENCE AND BEYOND A REASONABLE DOUBT THAT FOR SOME FRAUDULENT PURPOSE DEFENDANT REPRESENTED HIMSELF TO BE A CITIZEN OF THE U.S. AS CHARGED IN THE INDICTMENT. GULLOTA V. U.S., C.C.A. 8 (Mo.) 1940, 113 F.2d 683.

A crime generally consist of two elements, a physical wrongful deed (the "actus reus"), and a guilty mind that produces the act (the "mens rea"). "The existence of mens rea is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence." Dennis v. U.S., 341 U.S.494, at 500 (1951).

The factual scenario of the instant case is as follows; On April 8th, 1967, Petitioner was born outside the geographical limits of the U.S., i.e., Mexico, to one Mexican citizen parent, and one U.S. citizen parent. See Pet.Exh.No. 43 (Trial

Record, Government's Exhibit No. 12)(same). See also 8 U.S.C. §
1401(a)(7)(1952)("The following shall be nationals and citizen of the U.S. at
birth: ... 'a person born outside the geographical limits of the U.S. ... of
parents one of whom is an alien, and the other a citizen of the U.S.' ").

On November 9th, 1973, Petitioner was admitted to reside permanently in the
U.S. as an immediate relative of a U.S. citizen. See Pet.Exh.No. _44_ (Registration
Number: A-34-656-413, # 8517732). In accordance with increasing His identity with
American Society, [here], Petitioner subsequent to reaching the age of eighteen,
Registered His allegiance to the U.S., and His allegiance was accepted by the U.S.
Selective Service System, i.e., Selective Service Number: 67-1765118-3. See
Pet.Exh.No. _45_; see also 8 U.S.C. § 1101(a)(21)("The term **'national'** means a
person owing permanent allegiance to a state"). (emphasis added).

As aforementioned, Petitioner was arrested on December 25th, 1998, see
Pet.Exh.No. _4_, on January 19th, 1999, Petitioner was indicted on two counts, see
Pet.Exh.No. _5_, Count two of the indictment charged Petitioner with "falsely
claiming to be a citizen of the U.S.," in violation of 18 U.S.C. § 911.

The elements for U.S. citizenship at birth to a person born outside the
geographical limits of the U.S., are:

> **(i)** parents one of whom is an alien, and the other a citizen of the
> U.S.;
>
> **(ii)** the citizen parent's physical presence in the U.S. prior to the
> birth of the person claiming derived U.S. citizenship.

An indictment is intended to provide notice to the defendant that allows him
to intelligently consider his defense or plea. See U.S. v. Chappell, 6 F.3d 1095,
at 1099 (5th Cir. 1993)(indictment must charge essential elements of the crime to
allow preperation of a defense). To be sufficient, an indictment must allege each
material element of the offense; if it does not, it fails to charge that offense.
See U.S. v. Gaytan, 74 F.3d 545, at 552 (5th Cir. 1996); see also Russell v. U.S.,
369 U.S. 749, 763-64 (1962)(noting that one criterion by which the sufficiciency of

(23)

an indictment is judged is "whether the indictment contains the elements of the offense intended to be charged")(quotations omitted)(citing cases); U.S. v. Deish, 20 F.3d 139, at 145 (5th Cir. 1994)("it is not enough that the grand jury concludes that the defendant should be prosecuted for violating a particular statute; rather, the indictment **must also allege every element of the offense.**")(n. 13 included)(emphasis added); U.S. v. Wilson, 884 F.2d 174, at 179 (5th Cir. 1989)("An indictment that tracks the words of a statute is not sufficient "unless those words themselves fully, directly, and expressly, without any uncertainty of ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.").

On March 11th, 1999, while in deliberation, the jury inquired to the court as to pertinent and existing law, See Pet.Exh.No.  46 . In violation of Federal Rules of Criminal Procedure, Rule 43(a), the Distr.Crt. gave the deliberating jury a supplamental jury instruction. See Pet.Exh.No.  37 . On March 12th, 1999, the jury returned with a verdict of guilty to both counts of the indictment. See Pet.Exh.No.  6 . On June 10th, 1999, Petitioner appealed the sentence of conviction. On December 15th, 1999, court appointed counsel on appeal, filed a "Motion to Withdraw as Counsel." See Pet.Exh.No.  8 .

On the face of the record, Petitioner's appellate counsel failed to satisfy Anders v. California, 386 U.S. 738 (1967), by refusing to identify any appellate issues. See id. Pet.Exh.No.  8 . This error rendered appellate counsel's performance constitutionally deficient under the Sixth Amendment. See Strickland, 466 U.S., at 687-91. The absence of any meaningful legal assistance in the instant case makes a mockery of the representation of indigent defendant's contemplated by the U.S. Supreme Court in : U.S. v. Cronic, 466 U.S. 648, 659, 104 S.Ct. 2039 (1984); Penson v. Ohio, 488 U.S. 75, at 88-89, 109 S.Ct. 346 (1988).

On June 27th, 2000, the Fifth Circuit Court of Appeals "granted" appellate counsel's motion to withdraw. See Pet.Exh.No.  9 .

(24)

Petitioner contends that the appellate court should not have acted on the motion to withdraw before it made its own examination of the record to determine whether counsel's evaluation of the case was sound. Obviously, a court cannot determine whether counsel is in fact correct in concluding that an appeal is frivolous without itself first examining the record for arguable appellate issues. The U.S. Supreme Court plainly stated this requirement in Ellis v. U.S., 356 U.S. 674, 675, 78 S.Ct. 974 (1958), it was repeated in Anders v. California, and it was reiterated in McCoy v. Court of Appeals of Wisconsin, 486 U.S. 429, 442, 108 S.Ct. 1895 (1988). As the Court explained in McCoy:

> "To satisfy federal constitutional concerns, an appellate court faces two interrelated tasks as it rules on counsel's motion to withdraw. First, it must satisfy itself that the attorney has provided the client with a diligent and thorough search of the record for any arguable claim that might support the client's appeal. Second, it must determine whether counsel has correctly concluded that the appeal is frivolous." Ibid.

A false representation as to citizenship is not a crime unless made for a fraudulent purpose. U.S. v. Weber, N.D.Ill. 1947, 73 F.Supp. 88.

On June 15th, 2001, Petitioner timely filed His 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence, bringing to the court's attention that, § 1401(a)(7)(1952) governed Petitioner's birth abroad to one citizen parent. See Pet.Exh.No. 10 (meeting both of Strickland v. Washington prongs showing ineffective assistance of counsel). On October 1st, 2001, the government responded to Petitioner's § 2255 motion. See Pet.Exh.No. 11 (claiming that Petitioner's father did not meet the ten year requirement to satisfy § 1401(a)(7)). On October 11th, 2001, Petitioner rebutted the government's response to His § 2255 motion. See Pet.Exh.No. 12 (showing violations and case log supporting the litigation of said violations).

On November 5th, 2001, a "writ of Habeas Corpus Ad Testificandum" was issued requiring Petitioner's presence in court, relating to His non frivolous claim to derived U.S. citizenship. See Pet.Exh.No. 3 . On November 6th, 2001, an "Evident-

(25)

iary Hearing" was set for December 13th, 2001, to investigate Petitioner's background and non-frivolous claim to derived U.S. citizenship. See Pet.Exh.No. 3(a) . On February 8th, 2002, the evidentiary hearing was conducted by Magistrate Judge John Wm. Black, on February 22th, 2002, Judge Black filed his "report and recommendation." See Pet.Exh.No. 13 .

As is evident by the evidentiary hearing, Petitioner's father was physically present in the U.S. prior to Petitioner's birth, since 1959 till present. Here, Petitioner's father was born on December 17th, 1944, to one un-wed native-born U.S. citizen mother, section 201(e), of the I.N.A., governed birth abroad to one un-wed citizen mother, the Act provided: (in pertinent part)

> "if the mother had the nationality of the U.S. at the time of the child's birth ... shall be held to have acquired at birth her [n-ational]ity status." (emphasis added).

See also Miller v. Albright, 523 U.S. 420, 118 S.Ct. 1428 (1988)(Nationality and citizenship are not entirely synonymous; one can be a national of the United States and yet not be a citizen. 8 U.S.C. § 1101(a)(22) [8 U.S.C. § 1101(a)(22)] ... The provision that a child born abroad out of wedlock to a U.S. citizen mother gains her nationality has been interpreted to mean that the child gains her citizenship as well).

Around April of 1964 (Petitioner's father was working as a day laborer at the Callaghan Ranch, near Encinal, Texas), the Gonzalez family visited the U.S. Consulate and was erroneously informed that her children could not claim U.S. citizenship from her. See Pet.Exh.No. 47 (U.S. Consulate Document). As was noted by the U.S. Supreme Court in Montana v. Kennedy, 366 U.S. 308, 81 S.Ct. 1336 (1961), we need not stop to inquire whether, as some lower courts have held, there may be circumstances in which the United States is estopped to deny citizenship because of the conduct of its officials." Id., at 314, 81 S.Ct., at 1341.

Furthermore, as the record of the evidentiary hearing will reflect, during the proceedings, aforementioned estoppel nor an Immigration case that is analogous   to

(26)

the factual scenario of the instant case, to name: <u>Matter of Navarette</u>, (1967), 12 I. & N. Dec. 138, 142 (There, the Board of Immigration Appeals observed that constructive residence and constructive physical presence are familiar concepts in immigration law, and generally come into play where         actual    residence or presence is prevented by circumstances beyond a person's control, or by reliance upon erroneous information received from a U.S. Official, the Board stated that in such cases it is not equitable to penalize individuals for factors that they could not control or circumstances that they did not create), were presented to Magistrate Judge John Wm. Black for litigation. Here, Petitioner attempted to bring this fact to the Distr.Crt.'s attention via His "Motion for Relief from Judgment; and Leave to File an Amended Complaint. See Civil Action No. B-01-100, page 9, ¶ 2 thru page 25, ¶ 1.

The Grand Jury Clause provides protection against a manipulative prosecutor (or judge) who would supplant the grand jury by altering the charge to fit the proof, and thereby seek a conviction "on the basis of facts not found by, or perhaps not even presented to, the grand jury. <u>Russel v. U.S.</u>, 369 U.S.749, at 770. Such an alteration of an element, is called "constructive amendment," and requires automatic reversal and dismissal. <u>Ex Parte Bain</u>, 121 U.S. 1 (1887). Seen from this prospective, the question whether an element of the indictment has been changed at trial is to be answered not merely by reference to abstract terms, but also by reference to the facts, as the grand jury saw them, that gave each count content. Accordingly, a change in characterizing the element from its expression in the indictment to its presentation at trial will be an amendment, not a varience.

Thus, [I]f this Court cannot be sure from Petitioner's indictment that the grand jury received facts - material to convict on an element of the crime(s) - which the petit jury - and Judge John Black who proceeded over the evidentiary hearing pertaining to Petitioner's non-frivolous derived U.S. citizenship claim - received and used to convict. Then, the relief Petitioner seeks should  be granted.

(27)

## IX. CONCLUSION

In Conclusion, on September 19th, 2000, the House of representatives passed H.R. 5062, a bill introduced by House Crime Subcommittee Chairman Bill McCollum (R-FL), to restore fairness to the immigration laws. The legislation had broad bi-partisan support when introduced and unanimously passed the House.

"The 1996 law went too far. We are a just and fair nation and must strike a just and fair balance in our immigration codes-this legislation does just that," stated McCollum.

Here, Petitioner is non-cognizant in law, and verily believes He has statutory and constitutional claims, thus, cause of action contained within this His habeas corpus petition.

## X. PRAYER

**THEREFORE, PREMISE CONSIDERED,** Petitioner prays this Honorable Court grant relief. Petitioner having shown violation of the **Constitution, Laws, and Treaties,** of the United States, as required by 28 U.S.C. § 2241(c)(3). (emphasis added).

Respectfully presented:

*Raimundo Gonzalez-Gorribay*

U.S.M. # 82756-079
Pro se litigant.

(28)

## CERTIFICATE OF SERVICE

I, Raymundo Gonzalez-Garibay hereby certify that I have served a true and correct copy of the following:

MOTION SEEKING RELIEF/REVIEW FROM ILLEGAL CONFINEMENT
PURSUANT TO 28 U.S.C.A. § 2241

Which is seemed filed at the time it was delivered to prison authorities for forwarding, <u>Houston v. Lack</u>, 101 L.Ed.2d 245 (1988), upon the defendant(s) and or his/her attorney(s) of record, by placing same in a sealed, postage prepaid envelope addressed to:

OFFICE OF THE U.S. ATTORNEY          MICHAEL N. MILBY, DISTRICT CLERK
350 MAGNOLIA AVENUE                  U.S. DISTRICT COURT
BEAUMONT, TEXAS 77701                P.O. BOX 61010
                                     HOUSTON, TEXAS 77208-1010

and deposited same in the United States Postal Mail at United States Penitentiary-Beaumont,
          on this __third__ day of __August__, 2004.

Respectfully presented:

*Raymundo Gonzalez-Garibay*
Raymundo Gonzalez-Garibay,
U.S.M. # 82756-079
Pro se litigant.

RAYMUNDO GONZALEZ-GARIBAY
REGISTER NUMBER 82756-079
UNITED STATES PENITENTIARY
P.O. BOX 26030
BEAUMONT, TEXAS  77720-6030